UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JUDGE LYNCH
04 CV 02097

-------------------------------------------------------------X

HVB ALTERNATIVE ADVISORS, INC. and HVB
ALTERNATE INVESTMENTS, A.G.,

                                  Plaintiffs,

                      v.

JEFF C. LANDLE,

                                  Defendant.

-------------------------------------------------------------X

___ Civ. ____ (___)

**NOTICE OF REMOVAL**

TO:    SHAPIRO MITCHELL FORMAN ALLEN  & MILLER LLP
       Attn:  Michael I. Allen
       380 Madison Avenue
       New York, New York 10017
       (212) 972-4900

            -and-

       REED SMITH LLP
       Attn:  Andrew L. Morrison
       599 Lexington Avenue
       New York, New York 10022
       (212) 521-5400
       Attorneys for Plaintiffs

       PLEASE TAKE NOTICE that on March 16, 2004, Jeff C. Landle ("Landle"),

hereby files a Notice of Removal of this action to the United States District Court of the

Southern District of New York.

       YOU ARE ALSO ADVISED that Defendant Landle, on filing this Notice of

Removal in the Office of the Clerk of the United States District Court for the Southern District of

New York, also filed copies with the Clerk of the Supreme Court of the State of New York, in

and for the County of New York, New York, to effect removal pursuant to 28 U.S.C. § 1446.

Landle, by and through his attorneys, Morrison Cohen Singer and Weinstein, LLP, files this notice and petition to remove this action to the U.S. District Court for the Southern District of New York pursuant to 28 U.S.C. § 1441, and respectfully shows this Court:

1.    A civil action was commenced by summons and Complaint dated February 24, 2004 and is now pending in the Supreme Court of the State of New York, County of New York, in which HVB Alternative Advisors, Inc. ("HVBAA") and HVB Alternative Investments, A.G. ("HVBAI") are Plaintiffs and Landle is the Defendant.    That action is captioned <u>HVB Alternative Advisors, Inc. and HVB Alternative Investments, A.G. v. Jeff C. Landle</u>, Index Number 600479/04 (the "Action").   A copy of the summons and Complaint in the Action is annexed as Exhibit A.

2.    The Action is a civil suit arising from Plaintiffs' claims for breach of fiduciary duty, tortious interference with business relations and unjust enrichment in connection with Landle's departure from his employment with HVBAA.   Plaintiffs' Complaint purports to seek monetary damages and injunctive relief.

3.    The Complaint alleges that HVBAA is a New York corporation with its principal place of business in New York, that HVBAI is a regulated Austrian Investment Advisor domiciled in Vienna, Austria and that Landle is a resident of Connecticut. *See* Complaint ¶¶ 5-7. The Complaint seeks damages in excess of $5,000,000.  *Id.* ¶ 37.  The matter in controversy therefore exceeds the sum or value of $75,000.   This Court therefore has subject matter jurisdiction over this controversy, pursuant to 28 U.S.C. §1332.

4.    Removal of the Action to this Court pursuant to 28 U.S.C. §§ 1332 and 1441 is proper, on the ground that there is Diversity of Citizenship because all parties are citizens of different States and/or subjects of a foreign state and the amount in controversy exceeds the

sum or value of $75,000.

       5.      Landle received notice of the summons and Complaint in the Action on or about February 25, 2004, when he was personally served with same.

       6.      Because the Action is based upon Diversity of Citizenship, the Action is one of which the District Courts of the United States have original jurisdiction pursuant to 28 U.S.C. § 1332. Consequently, pursuant to 28 U.S.C. § 1441, Landle may thus remove this action to the U.S. District Court for the Southern District of New York.

       7.      This Notice of Removal has been filed within thirty days after Landle received notice of the summons and Complaint. Plaintiffs are being served with this Notice of Removal.

       8.      By filing this Notice of Removal, Landle does not waive any defense which may be available to him, including but not limited to its right to contest personal jurisdiction, improper service of process, and the absence of venue in this Court or in the court from which this action has been removed.

Dated: New York, New York
      March 16, 2004

                   MORRISON COHEN SINGER &
                    WEINSTEIN, LLP

By: _____
              Danielle C. Lesser (DL 2220)
              Andrew P. Schriever (AS 9788)
              750 Lexington Avenue
              New York, NY 10022
              (212) 735-8600
              Attorneys for Defendant

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X
HVB ALTERNATIVE ADVISORS,          :
INC. and HVB ALTERNATIVE           :
INVESTMENTS, A.G.,                 :
                                   :
                    Plaintiffs,    :
                                   :
        -against-                  :
                                   :
JEFF C. LANDLE,                    :
                                   :
                    Defendant.     :
-----------------------------------------------------------X

Index No. _600479/04_
Date Purchased:

Plaintiffs designate New York County
as Place of Trial

Basis of Venue is Plaintiffs' Place
of Residence

## SUMMONS

To the above named Defendant:

       **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiffs' Attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York), and in case of your failure to appear, judgment will be taken against you by default for the relief demanded in the complaint.

NEW YORK
COUNTY CLERK'S OFFICE

FEB 2 5 2004

NOT COMPARED
WITH COPY FILED

Dated: New York, New York
February 24, 2004

SHAPIRO MITCHELL FORMAN
ALLEN & MILLER LLP

By: _____
Michael I. Allen

380 Madison Avenue
New York, New York 10017
(212) 972-4900

- and -

Andrew L. Morrison
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

Attorneys for Plaintiffs

Defendant's address:

622 Third Avenue
29th Floor
New York, New York

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------X
HVB ALTERNATIVE ADVISORS,
INC. and HVB ALTERNATIVE
INVESTMENTS, A.G.,

                             Plaintiffs,

         -against-

JEFF C. LANDLE,

                           Defendant.
------------------------------------------------------X

Index No. ᴄ 00 479/04

NEW YORK
COUNTY CLERK'S OFFICE

FEB 2 5 2004

NOT COMPARED
WITH COPY FILED

## COMPLAINT

Plaintiffs HVB Alternative Advisors, Inc. ("HVB AA") and HVB Alternative

Investments, A.G. ("HVB AI"), by their undersigned attorneys, hereby allege as follows for their

complaint against defendant Jeff C. Landle ("Landle"):

### Nature of the Action

1.    This is an action for breach of fiduciary duty against Landle, formerly the highly

compensated President of HVB AA and a member of its Board of Directors. Landle also

participated in meetings of the Management Board of HVB AI, the corporate parent of HVB AA.

Landle is also liable to HVB AA for tortious interference with HVB AA's business relations and

has been unjustly enriched at the expense of HVB AA.

2.    While still working for HVB AA and participating in meetings of the

Management Board of HVB AI, Landle conspired with others, including a former member of the

HVB AI Management Board, to raid key employees from his group and to set up a competing

business. Landle sought to accomplish his goal by, among other things, failing to execute the

directives of his superiors with respect to HVB AI's pending joint venture (the "Joint Venture")

with the funds-of-funds business of Ramius Capital Group LLC ("Ramius"), meeting secretly with a former member of HVB AI's Management Board and/or his representatives to set up a competing business and affirmatively misleading HVB AA into offering key employees who reported to him bonuses significantly lower than the employees had expected, making them far more likely to leave HVB AA for an offer Landle planned to make on behalf of his new employer.

3.      Upon information and belief, Landle knew that the key employees he was soliciting to join his new competing business had signed retention agreements with HVB AA and were extremely important to the success of a the Joint Venture. Landle, who was to become the Chief Investment Officer ("CIO") of the Joint Venture and member of its Management Board, intentionally and through improper means interfered with those relationships.

4.      Plaintiffs seek preliminary and permanent injunctive relief, which will prevent Landle from continuing to solicit HVB AA's employees and from competing with Plaintiffs, Plaintiffs also seeks damages in an amount to be determined at trial, but believed to exceed $5,000,000, resulting from Landle's breaches of his fiduciary obligations and from his interference with HVB AA's business relations and for the amount by which he was unjustly enriched.

### The Parties and Venue

5.      HVB AA is a New York corporation with its principal place of business located at 666 Third Avenue, New York, New York. HVB AA is an indirect, wholly-owned subsidiary of Bayerische Hypo-und Vereinsbank A.G., a German bank. HVB AA's primary business is to manage a series of alternative investment products based upon hedge funds.

2

6.    HVB AI is the corporate parent of HVB AA. HVB AI is a regulated Austrian Investment Advisor domiciled in Vienna, Austria.

7.    Landle is a former Managing Director, President and CIO of HVB AA, who resides in Stamford, Connecticut. Until his resignation, Landle was responsible for managing a pool of approximately $1.5 billion in hedge funds for HVB AA. In this capacity, Landle was highly compensated, making in excess of $1,000,000 in 2003.

8.    This Court has jurisdiction over Landle pursuant to CPLR § 302(a).

9.    Venue is proper pursuant to CPLR § 503(a) and (c) because HVB AA and HVB AI are deemed residents of New York County.

### Background

10.    HVB AI's business is to provide clients with investment products based on hedge funds. HVB AI, in turn, contracted with HVB AA to manage the investments in approximately 72 separate hedge funds, totaling approximately $1.5 billion. These operations are known as funds-of-funds. In 2002, HVB AA hired Landle as its CIO to develop and execute an investment strategy based on three asset allocation models with distinct targeted return and volatility objectives. Landle executed this strategy in part by hiring five senior analysts, a Chief Operating Officer, two junior analysts, two administrative assistants and one sales representative. The investments made by Landle and his group resulted from their fundamental evaluation and analysis of hedge fund opportunities.

11.    In November 2003, HVB AI and Ramius announced plans to combine their fund-of-funds operations. This new Joint Venture was to be overseen by Ramius' Thomas Strauss ("Strauss"), who would act as the new Joint Venture's Chief Executive Officer and Paul Dart

3

("Dart"), who would become its Chief Operating Officer. Landle, who was the CIO for HVB AA business, was tapped to become the CIO of the Joint Venture's business.

12.    Landle and his group were deemed by HVB AI and Ramius to be critical to the success of the new Joint Venture. Landle was told to offer all but two of the members of his existing group positions with the Joint Venture and to provide HVB AA with a list of retention bonuses for each in amounts that he believed were appropriate in order to ensure that these key employees would join him and manage the combined fund-of-funds business. Landle discouraged Strauss from participating in the compensation decisions and discussions with members of his group.

13.    Shortly thereafter, Landle informed Strauss and Dart that he wanted each of the employees then in his group to continue to work with him in managing the new business and provided them with suggested retention bonus amounts. Each employee in Landle's group (including the two who had not been considered critical to the long-term success of the venture) was offered the exact retention bonus suggested by Landle. There was no negotiation.

14.    Following the announcement of the creation of the Joint Venture, Landle and Strauss worked together to develop an integrated approach to portfolio management. Despite Strauss' repeated requests, Landle made no effort to familiarize himself with Ramius' personnel and did not participate in any meaningful way during meetings with clients. Following Landle's resignation, Strauss discovered that Landle had failed to communicate with members of his group the agreements he and Strauss reached with respect to portfolio strategies and on their continuing roles and assignments.

4

15.    Upon information and belief, at the same time he and Strauss were working togther to develop an integrated approach to portfolio management and meeting with clients, Landle was discussing the formation of a competing fund-of-funds business with Alexander Schweickhardt ("Schweickhardt"), a former high-ranking officer of HVB AI and former member of its Management Board, to whom Landle had reported.

16.    On Friday, January 16, 2004, Landle tendered his resignation to Strauss and Dart. Landle claimed that he had received a better offer from another fund-of-funds company, but would not divulge its identity. Dart asked Landle whether he had spoken to Schweickhardt about a new opportunity. Landle assured Dart and Strauss that he had not. Landle also assured Dart and Strauss that he did not intend to solicit any of the members of his group for three to six months.

17.    Landle indicated to Strauss and Dart that he would be available for at least the next two weeks to serve HVB AA and HVB AI during the transition. Given his assurances concerning Schweickhardt and that he would not solicit the members of his group, Landle was told that he could stay on.

18.    Despite his assurances, upon information and belief, Landle had in fact met with Schweickhardt in December 2003 and in January 2004, prior to his resignation, and had conspired with them to establish a business in direct competition with HVB AA and HVB AI.

19.    On Tuesday, January 20, 2004, Landle asked Dart and Strauss whether it would be necessary for him to be in the office for the remaining two weeks. Landle indicated that he would be available on the phone or for meetings. Jens-Peter Neumann ("Neumann"), a member of the HVB AA Supervisory Board agreed to Landle's request on the condition that Landle

5

remain available to answer questions and otherwise assist HVB AA during the transition. Landle agreed.

20.     Landle's last day in the office was Wednesday, January 21, 2004. By the next day, Landle had made offers of employment to every one of the members of his group. At this time, Landle remained an officer and Managing Director of HVB AA.

21.     Following Landle's departure, Strauss and Dart discovered that Landle had misled HVB AI and HVB AA with respect to the retention bonuses he had recommended for the members of his group. Strauss and Dart discovered that despite having been given a blank check, the retention amounts that Landle had suggested were significantly below what the members of his group had expected. In telephone conversations with members of Landle's group on Sunday, January 25, 2004, Neumann and Armin Weiland similarly discovered that Landle had misled HVB AA and HVB AI about the retention amounts. The only explanation for this is that Landle, who was already planning to form a competitor and had hoped to hire members of his group, sought to make them more susceptible to joining him when the time was right by driving a wedge between members of his group and the Joint Venture.

22.     Strauss and Dart also discovered that Landle told his analysts that those running the Joint Venture would obtain all of the information it needed from them within one year, whereupon, they would be fired. In fact, neither Ramius, HVB AA nor HVB AI had plans to do this and Landle was never told that there were any such plans.

23.     On January 22, 2004, Dart was informed by the staff of HVB AA that Landle was aggressively calling them and making counter offers to their retention bonuses and guarantees.

24.     In order to counter the pressure Landle was asserting on the existing members of

6

his group to leave HVB AA. retention amounts for the eight employees considered to be critical to the long-term success of the business were increased (and in some cases extended) so as to be in line with the employees' expectations.

25.     By Wednesday, January 26, 2004, all six of the eight had signed new retention agreements and the other two, who were traveling, verbally indicated that they would sign the agreement upon their return. Each of the members of the group agreed to end communications with Landle.

26.     On January 29, 2004, while still employed by HVB AA and while still a member of the HVB AI Management Board, Landle met with senior analyst David Regan ("Regan") and spoke to other members of his group in an effort to have them join his new competing business. The next day, Regan failed to appear in the office and resigned by telephone later that day.

27.     Regan's authorization to enter into any HVB facility was immediately revoked. Despite this, while in London meeting with Landle during the week of February 1, 2004, Regan, without authorization, entered HVB's London office and left with an unknown quantity of material.

28.     Notwithstanding the increased retention amounts and Landle's assurances that he would not solicit HVB AA employees, two other members of Landle's group have resigned from HVB AA to join Landle's new competing business. These individuals have critical and specialized knowledge of various investments and strategies that are crucial to the success of the new Joint Venture.

29.     This knowledge possessed by the departed individuals and by those who remain is irreplaceable, especially within the time frame contemplated regarding the staff-up of new Joint

7

Venture.

30.     The departed individuals gained this knowledge through their employment at HVB AA.

31.     Landle continues to call and pressure the remaining members of his former group. On Friday, February 6, 2004, Dart was informed that Landle had made offers to all the remaining members of his group. HVB AA had to once again increase the retention amounts for one of its employees.

## FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty on behalf of HVB AA and HVB AI)

32.     Plaintiffs repeat and reallege the allegations set forth above.

33.     As an officer and Managing Director of HVB AA and as a participant in meetings and decisions of the HVB AI Management Board, Landle owed to HVB AA and HVB AI a duty of undivided loyalty.

34.     By virtue of Landle's abuse of his position and breach of loyalty, including his misrepresentations to HVB AA, which caused Plaintiffs to offer key employees retention bonuses that were significantly lower than their expectations and his misrepresentations to his employees concerning HVB AA's intent, Landle breached his fiduciary duties to HVB AA and HVB AI.

35.     By virtue of these actions, HVB AA has lost key employees at a critical time in its new relationship with Ramius.

36.     HVB AA and HVB AI have been harmed and will continue to be harmed should Landle not be enjoined from continuing in his efforts to solicit HVB AA's employees.

8

37.     HVB AA and HVB AI seek damages in an amount to be proven at trial, but believed to be in excess of $5,000,000, which have resulted from Landle's breaches of his fiduciary duties.

38.     HVB AA and HVB AI are also entitled to preliminary and permanent injunctive relief in order to prevent him from continuing to profit from his breaches of duty through the continued solicitation of key employees and the related disruption of the Joint Venture, with which he now competes.

39.     HVB AA and HVB AI lack an adequate remedy at law.

### SECOND CAUSE OF ACTION
#### (Tortious Interference With Business Relations on Behalf of HVB AA)

40.     HVB AA repeats and realleges the allegations set forth above.

41.     HVB AA is engaged in business relations with its employees, each of whom has signed retention agreements.

42.     The employees who were members of Landle's group are critical to the success of HVB AA's fund-of-funds business.

43.     Landle has intentionally interfered with those relationships using dishonest, unfair and improper means, including providing false information to and misleading his then employer, HVB AA.

44.     HVB AA has been harmed and will continue to be harmed should Landle not be enjoined from continuing in his efforts to interfere with the relationship between HVB AA and its employees.

9

## THIRD CAUSE OF ACTION
### (Unjust Enrichment on Behalf of HVB AA)

45.    HVB AA repeats and realleges the allegations set forth above.

46.    While in breach of his fiduciary obligations, Landle received compensation from HVB AA.

47.    A faithless fiduciary may not retain such compensation.

48.    Landle should be required to disgorge all compensation he earned during the period when he was in breach of his fiduciary obligations.

WHEREFORE, Plaintiffs respectfully request that a judgment be entered awarding the following relief:

A.    Temporarily and permanently enjoining Landle from soliciting, directly or indirectly HVB AA employees and competing with HVB AA and HVB AI for a period of at least six months;

B.    Awarding HVB AA and HVB AI damages in an amount to be determined at trial;

C.    Requiring Landle to disgorge all compensation he received during the period that he was in breach of his fiduciary obligations;

D.    Requiring Landle to pay all costs and expenses, including attorneys' fees, incurred by Plaintiffs in connection with this action;

E.    Granting such other relief as the Court may deem appropriate.

10

Dated: New York, New York
February 24, 2004

SHAPIRO MITCHELL FORMAN
ALLEN, & MILLER LLP

By: _____
Michael I. Allen

380 Madison Avenue
New York, New York  10017
(212) 972-4900

- and -

Andrew L. Morrison
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

Attorneys for Plaintiffs

11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X

HVB ALTERNATIVE ADVISORS, INC. and HVB         Index No. 600479/04
ALTERNATE INVESTMENTS, A.G.,

                     Plaintiffs,         **NOTICE OF FILING OF**
                                           **<u>NOTICE OF REMOVAL</u>**

        v.

JEFF C. LANDLE,

                    Defendant.

-------------------------------------------------------------X

        Defendant, Jeff C. Landle, hereby gives notice that he filed his Notice of Removal

with the United States District Court for the Southern District of New York on March 16, 2004.

A copy of the Notice of Removal is attached.


Dated: New York, New York
      March 16, 2004

                          MORRISON COHEN SINGER &
                            WEINSTEIN, LLP

                By: _____
                    Danielle C. Lesser (DL 2220)
                    Andrew P. Schriever (AS 9788)
                    750 Lexington Avenue
                    New York, NY  10022
                    (212) 735-8600
                    Attorneys for Defendant


TO:    SHAPIRO MITCHELL FORMAN ALLEN  & MILLER LLP
        Attn:  Michael I. Allen
        380 Madison Avenue
        New York, New York 10017
        (212) 972-4900

            -and-

#500065 v1 \17373 \002

REED SMITH LLP
Attn:  Andrew L. Morrison
599 Lexington Avenue
New York, New York 10022
(212) 521-5400
Attorneys for Plaintiffs

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                               )   ss.:
COUNTY OF NEW YORK   )

      Tom Donoghue being duly sworn, deposes and says:

      1.     Deponent is not a party to the action, is over 18 years of age and resides in New York County, New York.

      2.     On the 16th day of March, 2004, deponent served the annexed Notice of Removal upon:

> Michael I. Allen
> Shapiro Mitchell Forman Allen & Mille
> 380 Madison Avenue
> New York, New York 10017
>
> Andrew L. Morrison
> Reed Smith LLP
> 599 Lexington Avenue
> New York, New York 10022

      by hand delivery to the addresses above.

                               TOM DONOGHUE

Sworn to before me this
16th day of March, 2004.

Notary Public

LAUREN M. BRIENZA
Notary Public, State of New York
No. 01BR6067228
Qualified in Nassau County
Certificate Filed in Nassau County
Commission Expires December 3, 2005